**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 1:14-cv-01544-LO-JFA |
| | : | |
| MATT GUASTAFERRO, | : | |
| | : | |
|     Defendant. | : | |
| | : | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.............................................................................................. 3

ARGUMENT.....................................................................................................................5

    I.      Introduction………………………………………………………………..5

    II.     Standard of Review………………………………………...………………..……6

    III.    First Affirmative Defense (Fair Use)……………………………………..……..8

    IV.   Second and Third Affirmative Defenses (Copyright Misuse and Unclean Hands).....10

    V.     Fourth Affirmative Defense (Abandonment)……………………………………...12

    VI.   Fifth Affirmative Defense (Minimal Creativity)…………………………….…...13

    VII.  Sixth Affirmative Defense (Invalidity)…………………………………………14

    VIII.  Seventh Affirmative Defense (Innocent Infringer)………………………..…15

    IX.   Eighth Affirmative Defense (Failure to Mitigate

           Damages)……………..……...……16

CONCLUSION.....................................................................................................18

CERTIFICATE OF SERVICE…………………………………………………………..19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alliance Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc.,*
     No. CIV.A. 13-2510, 2014 WL 4548474, at *2 (E.D. Pa. Sept. 11, 2014)………………7

*Banks v. Realty Mgmt. Serv., Inc*.,
     No. 1:10-CV-14, 2010 WL 420037, (E.D. Va. Jan. 29, 2010)…………..………………...6

*Bayer CropScience AG v. Dow AgroSciences LLC*,
     No. CIV. 10-1045 RMB/JS, 2011 WL 6934557 (D. Del. Dec. 30, 2011)…………...…..11

*Clem v. Corbeau*,
     98 F. App'x, 197, 203 (4th Cir. 2004)…….…………. ……......…………………………...7

*Frank Betz Assocs., Inc. v. J.O. Clark Constr.*, *LLC*,
     CIV.A 3:08-CV-00159, 2010 WL 2253541 (M.D. Tenn. May 30, 2010)………………17

*Grant v. Bank of Am., N.A*.,
     No. 2:13-CV-342, 2014 WL 792119 (E.D. Va. Feb. 25, 2014)………....……7, 8, 11, 12

*Int'l Motor Contest Ass'n, Inc. v. Staley*,
     434 F. Supp. 2d 650, 660 (N.D. Iowa 2006)……………………………………………10

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
     4:08-CV-03181, 2010 WL 4366990 (S.D. Tex. Oct. 27, 2010)…………………………17

*In re Gabapentin Patent Litig.*,
     649 F.Supp.2d 340, 349 (D.N.J.2009)…………………………………………….…..11

*Khadka v. Rajamani*,
     No. 1:08CV1320 (JCC), 2009 WL 910849 (E.D. Va. Apr. 1, 2009)..………….…..……..6

*Lasercomb Am., Inc. v. Reynolds*,
     911 F.2d 970, 978 (4th Cir. 1990)………………..…………………………………....10

*Lopez v. Asmar's Mediterranean Food, Inc., No*.
     1:10CV1218 JCC, 2011 WL 98573 (E.D. Va. Jan. 10, 2011)…………………………7

*Malibu Media, LLC v. Does 1*,
     No. CIV.A. 12-2078, 2013 WL 1702549 (E.D. Pa. Mar. 6, 2013)……8, 10, 12, 14, 16, 17

*Malibu Media, LLC v. John Doe*,

No. 2:13-CV-135-RLM-JEM, 2014 WL 1031336 (N.D. Ind. Mar. 17, 2014)………....16

*Malibu Media, LLC v. Zumbo*,
No. 2:13-CV-729-JES-DNF, 2014 WL 2742830 (M.D. Fla. June 17, 2014)……………17

*Malibu Media, LLC v. Julien*,
No. 1:12–cv–01730–TWP–MJD, 2013 WL 5274262 (S.D. Ind. Sept.17, 2013)…..……16

*Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors*,
983 F. Supp. 1167, 1174 (N.D. Ill. 1997)………………………………...………...15

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
No. CV 09-80-LPS, 2015 WL 2406155, at *5 (D. Del. May 18, 2015)…………………..7

*Motion Picture Patents Co. v. Universal Film Mfg. Co*.,
243 U.S. 502 (1917)……………………………………………………..……....10

*Palmer v. Oakland Farms, Inc.*,
No. 5:10CV00029, 2010 WL 2605179 (W.D. Va. June 24, 2010)...... ……………...…..6

*Tingley Sys., Inc. v. HealthLink, Inc.,*
509 F.Supp.2d 1209, 1219 (M.D. Fla. 2007)…………………………………………17

*Thomas M. Gilvert Architects, P.C. v. Accent Builders & Developers, LLC*,
629 F. Supp. 2d 526, 536–37 (E.D. Va. 2008)…………………………………..……10

*Tyco Fire Products LP v. Victaulic Co.,*
777 F. Supp. 2d 893  (E.D. Pa. 2011) …………………………………………….7, 8

**Statutes and Other Authorities**
17 U.S.C. § 512……………...…………………………………………..………...11, 12
17 U.S.C. § 107………………………………………………………..…….9
Fed. R. Civ. P. 12(f)………..………………………………………….…...….....7

Fed. R. Civ. P. 8……………………………………………………...…..……………..8

Fellmeth, Xavier, *Copyright Misuse and the Limits of the Intellectual Property Monopoly*,
6 J. Intell. Prop. L. 1, 25 (1998). …………………….……………………………..…11

Sag, Matthew, *IP Litigation in United States District Courts: 1994 to 2014*
(February 26, 2015). Iowa Law Review. ……………………………….….……… 5

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO**

**PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES**

COMES NOW, the Defendant, MATT GUASTAFERRO ("Guastaferro" or "Defendant"), by and through its counsel of record, and hereby submits this Memorandum in Opposition to Plaintiff Malibu Media, LLC's ("Malibu Media" or "Plaintiff") Motion to Strike Affirmative Defenses, and states as follows:

### I.   Introduction

This case is one of the 241[1] pornographic BitTorrent copyright infringement cases filed by Malibu Media in the Alexandria Division of this United States District Court for the Eastern District of Virginia since June 11, 2014. The pornography producer, Malibu Media is such a prolific litigant that in 2014 it was the plaintiff in 1,705 copyright suits, which constituted over 41.5% of all copyright suits nationwide. Sag, Matthew, *IP Litigation in United States District Courts: 1994 to 2014* (February 26, 2015). Iowa Law Review[2]. As with all Malibu Media lawsuits, the copyrights at issue here correspond to titles found on the X-Art.com website. A quick search for any of the titles at issue here on the X-Art.com website turns up preview clips of movies showing nude models engaged in graphic sexual intercourse.

In these cases, Malibu Media alleges that unknown Internet users, identified only by IP addresses, downloaded Malibu Media's pornographic movies using a file sharing protocol called BitTorrent. Malibu Media, through a third party firm called IPP, logs the IP addresses of people who download its movies and then files suit against those IP addresses in federal court. Malibu Media then seeks leave to issue a subpoena to the ISP that issued the IP address, to identify the

---

[1] 1:14-cv-00700 through 1:14-cv-00719; 1:14-cv-00931 through 1:14-cv-00953; 1:14-cv-01087 through 1:14-cv-01112; 1:14-cv-01158 through 1:14-cv-01182; 1:14-cv-01462 through 1:14-cv-01483; 1:14-cv-01529 through 1:14-cv-01546; 1:14-cv-01727 through 1:14-cv-01746; 1:15-cv-00153 through 1:15-cv-00176; 1:15-cv-00351 through 1:15-cv-00392; 1:15-cv-00513 through 1:15-cv-00525; 1:15-cv-00561 through 1:15-cv-00571; and 1:15-cv-00771 through 1:15-cv-00778.

[2] Available at SSRN: http://ssrn.com/abstract=2570803 or http://dx.doi.org/10.2139/ssrn.2570803.

person who pays the bill for the account to which the IP address at issue was assigned. If Malibu Media is able to communicate with this individual, whether directly or through his or her legal counsel, Malibu Media will then offer to dismiss the case in exchange for monetary settlement. If this individual or family member refuses settlement or cannot afford even near the amount requested, Malibu Media will often then substitute in place of the John Doe defendant the individual or family member, sometimes haphazardly. Plaintiff's Motion to Strike Affirmative Defenses, notably with a request for oral argument which is extremely atypical of Plaintiff in these matters, is nothing more than a tactical decision to increase the costs of litigation in an effort to coerce the Defendant into settlement.

## II.   Standard of Review

Federal Rule of Civil Procedure Rule 12(f) allows a district court to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). A motion to strike a defense is, however, considered "a drastic remedy which is disfavored by the courts and infrequently granted." *Khadka v. Rajamani*, No. 1:08CV1320 (JCC), 2009 WL 910849, at *1 (E.D. Va. Apr. 1, 2009). "Even where technically appropriate and well-founded, motions to strike defenses as insufficient are often denied in absence of a showing of prejudice to the moving party." *Id*. In reviewing motions to strike defenses, federal courts have traditionally "view[ed] the pleading under attack in a light most favorable to the pleader," and have stricken the defense only when it has "no possible relation to the controversy." *Palmer v. Oakland Farms, Inc.*, No. 5:10CV00029, 2010 WL 2605179, at *2 (W.D. Va. June 24, 2010). "When a court strikes a defense, the general practice is to grant the defendant leave to amend." *Banks v. Realty Mgmt. Serv., Inc.*, No. 1:10-CV-14, 2010 WL 420037, at *1 (E.D. Va. Jan. 29, 2010) (citing 5 Charles Alan Wright & Arthur R. Miller § 1381 (3d ed. 2004)).

Affirmative defenses are governed by Federal Rule of Civil Procedure Rule 8(c)(1), which provides that defendants need only 'affirmatively state any avoidance or affirmative defense.' Accordingly, an affirmative defense must only alert the opposing party that "the issue exists, not precisely how the issue is implicated under the facts of a given case .... *Alliance Indus. Ltd. v. A-1 Specialized Servs. & Supplies, Inc.*, No. CIV.A. 13-2510, 2014 WL 4548474, at *2 (E.D. Pa. Sept. 11, 2014); *see also Malibu Media, LLC v. Does 1,* No. 12–2078, 2013 WL 1702549, at *2 (E.D.Pa. Mar.6, 2013) ("As Rule 8(c)(1) makes clear, affirmative defenses are used to preserve a defendant's potential arguments at trial by providing notice to the other party of issues to be raised."); *see also Tyco,* 777 F.Supp.2d at 901 ("Thus, the Court will only strike defenses challenged on sufficiency grounds if they do not meet this low standard.").

"An affirmative defense may be pleaded in general terms and will be held to be sufficient ... as long as it gives plaintiff fair notice of the nature of the defense." *Clem v. Corbeau*, 98 F. App'x 197, 203 (4th Cir. 2004) (quoting 5 Charles Allan Wright & Arthur R. Miller, Federal Practice & Procedure § 1274, at 455-56 (2d ed. 1990)). Providing knowledge that the issue exists, not precisely how the issue is implicated under the facts of a given case, is the purpose of requiring averments of affirmative defenses. *Masimo Corp. v. Philips Elec. N. Am. Corp.*, No. CV 09-80-LPS, 2015 WL 2406155, at *5 (D. Del. May 18, 2015).

The heightened pleading requirements set forth in *Twombly* and *Iqbal* do not apply to affirmative defenses. *Lopez v. Asmar's Mediterranean Food, Inc., No.* 1:10CV1218 JCC, 2011 WL 98573, at *2 (E.D. Va. Jan. 10, 2011); s*ee also Grant v. Bank of Am., N.A.*, No. 2:13-CV-342, 2014 WL 792119, at *4 (E.D. Va. Feb. 25, 2014) (finding that the Fourth Circuit has not held that the higher pleading standard applies to affirmative defenses). Instead, this Court looks to whether the challenged defenses are contextually comprehensible. *Grant*, No. 2:13-CV-342,

2014 WL 792119, at *4.

### III.   <u>First Affirmative Defense (Fair Use)</u>

Section 107 of the 1976 Copyright Act provides for a "fair use" defense in a copyright infringement suit. Under Section 107: "[T]he fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means . . . for purposes <u>such as</u> criticism, comment, news reporting, teaching, scholarship, or research, is not an infringement of a copyright." (emphasis added) 17 U.S.C. § 107. The statute sets forth several "factors" a court should consider in determining if defendant has made a "fair use" of a work: (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3) the "portion used in relation to the copyrighted work as a whole"; and (3) "the effect of the use upon the potential market" for the copyrighted work. *Id*. § 107(1)-(4). Under the liberal standard of notice pleading that applies to affirmative defenses, Defendant's pleadings are sufficient to "aler[t] the adversary to the existence of the issue for trial." *Tyco*, 777 F. Supp. 2d at 900; *See also Malibu Media, LLC v. Does 1*, No. CIV.A. 12-2078, 2013 WL 1702549, at *4 (E.D. Pa. Mar. 6, 2013) (denying plaintiff Malibu Media's motion to strike fair use as an affirmative defense even when defendants failed to specify why their use of Malibu's copyrights constituted "fair use" under Section 107, stating only "[d]efendant's use of the work in question, if it occurred at all, was a legally protected fair use of the allegedly infringed work.").

An affirmative defense need only be pleaded in general terms and will be held to be sufficient as long as it gives the plaintiff fair notice of the nature of the defense. *Grant v. Bank of Am.*, N.A., No. 2:13-CV-342, 2014 WL 792119, at *3 (E.D. Va. Feb. 25, 2014). Defendant's use of any works, if any, was non-commercial, and given that the work was of a kind that is routinely

shared for free by many producers of such films, including Malibu Media.

     Defendant is informed and believes and on that basis alleges that Malibu Media's purported technical expert is described variously as "IPP Limited," and "IPP International UG" (together, "IPP"). IPP is responsible for monitoring BitTorrent for infringement of its client's works (including for Malibu Media), and for collecting the computer forensic evidence that serves as the basis for this suit. IPP is actually nothing more than the continuation and alter-ego of a German company called Guardaley. Defendant is informed and believes and on that basis alleges that Guardaley was accused of wrongdoing in a German court and that Guardaley was found to be initially seeding its clients' content onto BitTorrent, i.e., operating a "honey pot". Defendant is not clear on the specifics of Guardaley's wrongdoing or what the court specifically found, but is aware that there are documents, in German, relating to this issue. Many pornographic content producers and owners, including possibly Malibu Media, purposefully make certain content freely available on the Internet, both on streaming "tube" sites, and, sometimes, on BitTorrent. The idea behind this strategy is to generate interest in a particular brand of content, and drive fans to pay for memberships or for premium content offered by the same brand. Defendant is informed and believes that IPP or another agent of Malibu Media is responsible for initially seeding some of Malibu's content onto BitTorrent in the first place and for facilitating infringing downloads by BitTorrent users.

     At this stage, it would be premature for the Court to make factual findings regarding whether Defendant engaged in the type of online downloading and file-sharing that does, or does not, constitute fair use. Defendant has provided sufficient notice of the nature of this defense. Accordingly, the affirmative defense should not be stricken as a matter of law at this juncture.

IV.     **Second and Third Affirmative Defenses (Copyright Misuse and Unclean Hands)**

Malibu Media's copyrights in suit do not "promote the Progress of Science and useful Arts," which is the policy underlying the grant of a copyright. Copyright misuse derives from the equitable doctrine of "unclean hands", which bars a party from obtaining relief when the party has acted improperly, though not necessarily illegally. *See Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502 (1917); *see also Int'l Motor Contest Ass'n, Inc. v. Staley*, 434 F. Supp. 2d 650, 660 (N.D. Iowa 2006) (denying plaintiff's motion to strike <u>both</u> copyright misuse and unclean hands as affirmative defenses grounded in the argument that plaintiff sought to expand its copyright improperly in violation of public policy) (emphasis added).

 Plaintiff's reliance upon *Thomas M. Gilvert Architects, P.C. v. Accent Builders & Developers, LLC*, 629 F. Supp. 2d 526, 536–37 (E.D. Va. 2008) for the proposition that Defendant's affirmative defense is inadequate is misplaced, as the *Thomas* court addressed the sufficiency of the defense on summary judgment. Copyright misuse is an evolving common law doctrine that is not limited to antitrust or anti-completive behavior.  The misuse of copyright defense applies when the copyright is used "in a manner violative of the public policy embodied in the grant of a copyright." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 978 (4th Cir. 1990). Inequitable conduct on the part of the copyright holder need only offend the public policy behind the copyright system to trigger the defense. Xavier Fellmeth, *Copyright Misuse and the Limits of the Intellectual Property Monopoly*, 6 J. Intell. Prop. L. 1, 25 (1998).

In the present matter, the pleadings are sufficient to put Malibu on notice of the issues to be raised at trial. *See Malibu Media, LLC v. Does 1*, No. CIV.A. 12-2078, 2013 WL 1702549, at *5 (E.D. Pa. Mar. 6, 2013) (denying Malibu Media's motion to strike finding that while not detailed or specific in its pleading, pleading misuse of copyright as an affirmative defense is

sufficient to put Malibu on notice of the issue to be raised at trial and uncleans to be an equitable defense that forecloses or limits a plaintiff's ability to recover from an injury due to its own misconduct); *Bayer CropScience AG v. Dow AgroSciences LLC*, No. CIV. 10-1045 RMB/JS, 2011 WL 6934557 at *4 (D. Del. Dec. 30, 2011) (denying a motion to strike a patent misuse defense where the defendant simply "alleged that [plaintiff] was enforcing a patent it knew was invalid, unenforceable, and/or not infringed"); *In re Gabapentin Patent Litig.*, 649 F.Supp.2d 340, 349 (D.N.J. 2009) (holding a patent misuse affirmative defense requires "only allegations of conduct that had the effect of impermissibly extending the limited protection from competition afforded by the ... patent").

An affirmative defense need only be pleaded in general terms and will be held to be sufficient as long as it gives the plaintiff fair notice of the nature of the defense. *Grant v. Bank of Am.*, N.A., No. 2:13-CV-342, 2014 WL 792119, at *3 (E.D. Va. Feb. 25, 2014). In Defendant's affirmative defense of copyright misuse, Defendant has stated that Malibu Media's use of its copyrights violates public policy as Malibu Media appears to seek to obtain its principal revenue through litigation, specifically settlement, rather than through its yearly service fee of $149.95[3], which allows users to download one (1) copy of all available videos. Further, Defendant is informed and believes that Malibu Media opted to pursue such settlement rather than send notice to the online service provider hosting the hash files under 17 U.S.C. § 512(c)(3)(A)(i-vi) in order to purge access to the infringed work. Moreover, Defendant is informed and believes that IPP or another agent of Malibu Media is responsible for initially seeding some of Malibu's content onto BitTorrent in the first place and for facilitating infringing downloads by BitTorrent users. Essentially, Defendant has asserted that Malibu Media engaged in abusive conduct by attempting

---

[3] https://bill.ccbill.com/jpost/billingCascade.cgi?clientAccnum=928532&clientSubacc=0001&cascadeId=13803

to extract exorbitant sums from individuals for alleged copyright infringement, while it offers its product for an incomparable fee and fails to police alleged infringements so that it can instead collect these exorbitant sums. In light of this violation of public policy, Defendant maintains that Malibu Media has unclean hands. Thus, Defendant's affirmative defenses of copyright misuse and unclean hands are comprehensible and adequately provide Plaintiff with fair notice of the nature of the defenses.

## V.   <u>Fourth Affirmative Defense (Abandonment)</u>

In the present case, Defendant has asserted that Plaintiff should be barred from recovery, as Plaintiff failed to send a notice under 17 U.S.C. § 512(c)(3)(A)(i-vi) to the online service provider hosting the hash files identified under Exhibit B of the Amended Complaint[4]. Again, Defendant is informed and believes that IPP or another agent of Malibu Media is responsible for initially seeding some of Malibu's content onto BitTorrent in the first place and for facilitating infringing downloads by BitTorrent users. The Ninth Circuit has stated that a copyright owner can abandon some rights without abandoning all rights. *Melchizedek v. Holt*, 792 F. Supp. 2d 1042, 1051 (D. Ariz. 2011); s*ee also Micro Star v. FormGen Inc.*, 154 F.3d 1107, 1114 (9th Cir.1998) (finding that because FormGen overtly encouraged players to make and freely distribute new levels, FormGen may indeed have abandoned its exclusive right to do the same).

An affirmative defense need only be pleaded in general terms and will be held to be sufficient as long as it gives the plaintiff fair notice of the nature of the defense. *Grant v. Bank of Am.*, N.A., No. 2:13-CV-342, 2014 WL 792119, at *3 (E.D. Va. Feb. 25, 2014). Whether Plaintiff's conduct evidenced an intent to abandon its copyrights is a question of fact to be determined at a later phase of this litigation. *Malibu Media, LLC*, No. CIV.A. 12-2078, 2013 WL

---

[4] Mainstream copyright owners now send takedown notices for more than 6.5 million infringing files, on over 30,000 sites, each month. http://cpip.gmu.edu/2013/12/05/the-failure-of-the-dmca-notice-and-takedown-system-2/

1702549, at *6 (denying Malibu Media's motion to strike copyright abandonment as an affirmative defense). S*ee cf. Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 483–84 (2d Cir.2004) (denying a motion for summary judgment on an abandonment claim because it was "a factual issue that require[d] further exploration"); *Malibu Media v. Does*, No. 12-2078, 2013 WL 1702549, at *4-8 (denying motion to strike abandonment, unclean hands, and invalid copyright affirmative defenses); *Malibu Media, LLC v. Does 1*, No. 12-CV-2078, 2013 WL1702549, at *5 (E.D. Pa. Mar. 6, 2013) (denying Malibu Media's motion to strike copyright abandonment as an affirmative defense); *Malibu Media, LLC v. Alfred Popp*, No. 1:14-cv-00700-GBL-JFA, CM/ECF 20 (E.D. Va. April 13, 2015) (denying motion to strike because the abandonment defense results in a question of fact and is legally plausible). Accordingly, Defendant has provided sufficient notice of the nature of this defense.

## VI.    Fifth Affirmative Defense (Copyright Unenforceability)

A work must be original to be copyrightable; indeed, the "sine qua non of copyright is originality." *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991). To be "original," the work in question must have been "independently created by the author (as opposed to copied from other works)," and it must "possess[ ] at least some minimal degree of creativity." *Darden v. Peters*, 488 F.3d 277, 286 (4th Cir. 2007). The threshold level of creativity required for copyrightability is low such that the "vast majority of works make the grade quite easily, as they possess some creative spark." *Id*. Nevertheless, "[t]here remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." *Id*. 37 C.F.R. § 202.1 provides a list of some examples, which are notably not exhaustive.

While it is not surprising Plaintiff would disagree with this position, Defendant has

13

provided adequate notice of the nature of the defense. An affirmative defense must only provide the opponent fair notice of the issue involved. *Malibu Media, LLC*, No. CIV.A. 12-2078, 2013 WL 1702549, at *4 (denying Malibu Media's motion to strike as Defendant raised the invalidity defense stating, "[p]laintiff's copyrights are invalid and/or unenforceable"). *See also Senju Pharm. Co., Ltd. v. Apotex, Inc.*, 2013 WL 444928, at *2 (D.Del. Feb.6, 2013) (denying a motion to strike an affirmative defense which stated plaintiffs' patents were "invalid for failure to comply with one or more of the provisions of Title 35 of the United States Code, including, but not limited to Sections 101, 102, 103 and/or 112"); *Alfred Popp*, No. 1:14-cv-00700-GBL-JFA, CM/ECF 20 (E.D. Va. April 13, 2015) (denying motion to strike because the determination of whether Plaintiff's works are creative enough to meet the necessary standard is a question of fact).

Defendant has asserted that "the Amended Complaint is barred as the Works lack minimal creativity given the substance of the Works and variance between them." (¶ 37, Answer). Malibu Media produces and/or distributes pornographic movies, most of which are available through the X-Art.com website. The movies at issue feature young-looking people engaged in actual, graphic sexual intercourse. The movies at issue have no plot, and very little, if any, dialogue. Although the requisite level of creativity is low, Defendant maintains that due to the subject and lack of variance of these products, the creative spark is utterly lacking or so trivial as to be virtually nonexistent. Thus, the minimum creativity required for copyright protection is not present and the copyrights in Plaintiff's Works are unenforceable.

## VII.   Sixth Affirmative Defense (Invalidity)

Defendant does not oppose an order striking his sixth affirmative defense without prejudice.

**VIII.**   **Seventh Affirmative Defense (Innocent Infringer)**

Section 504 provides: "In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." 17 U.S.C. § 504(c)(2). If a notice of copyright ... appears on the published phonorecord or phonorecords to which a defendant in a copyright infringement suit had access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement." 17 U.S.C. § 402(d).  The [innocent infringer] <u>defense</u> may be raised only when the infringer relied on an authorized copy that omitted the copyright notice17 U.S.C. § 405(b). (emphasis added) *Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors*, 983 F. Supp. 1167, 1174 (N.D. Ill. 1997). Although innocent intent does not relieve a defendant of liability for infringement, any person who "innocently infringes a copyright, in reliance upon an authorized copy ... from which the copyright notice has been omitted and which was publicly distributed by authority of the copyright owner ... incurs no liability for actual or statutory damages ... for any infringing acts committed before receiving actual notice that registration for the work has been made ... if such person proves that he or she was misled by the omission of notice." *Id.*

Upon information and belief, none of Plaintiff's works contained any form of copyright notice if and when distributed through BitTorrent. In addition, Defendant is informed and believes that IPP or another agent of Malibu Media is responsible for initially seeding some of Malibu Media's content onto BitTorrent in the first place and for facilitating infringing downloads by BitTorrent users, thereby authorizing the distribution of Malibu Media's works. It would be improper for the Court to strike the innocent infringer defense at this juncture because

whether Malibu Media attached notices of copyright to its works is an open question as is

whether Malibu Media authorized distribution of it works to a third party agent through

BitTorrent. *See Malibu Media, LLC v. Does 1*, No. CIV.A. 12-2078, 2013 WL 1702549, at *6

(E.D. Pa. Mar. 6, 2013).

IX.   **Eighth Affirmative Defense (Failure to Mitigate Damages)**

Malibu Media is well aware that its content is being infringed online, and has

purposefully avoided taking steps that might mitigate the spread of its content onto BitTorrent.

Upon information and belief, Malibu Media and/or its agent IPP or another agent of Malibu

Media, have actually had conversations with certain people about how to better ensure that

Malibu Media content will be spread quickly and easily onto BitTorrent. Of course, the more

widely Malibu Media content is spread online, the more people they can sue for infringement,

thus transforming every title they make into a multi-million dollar asset as the copyright that can

launch a thousand lawsuits. Even if Malibu Media elects to pursue only statutory rather than

actual damages, failure to mitigate remains relevant in calculating appropriate statutory damages.

In *Malibu Media, LLC v. Julien*, the court explained that because it has broad discretion

in determining how to award statutory damages, a failure to mitigate damages may remain

relevant, particularly because one purpose of statutory damages is to approximate actual

damages that are difficult to prove. *Malibu Media, LLC v. Julien*, No. 1:12–cv–01730–TWP–

MJD, 2013 WL 5274262, at *2 (S.D. Ind. Sept.17, 2013) (citing *F.E.L. Publ'ns Ltd. v. Catholic

Bishop of Chi.*, 754 F.2d 216, 219 (7th Cir.1985); *see also Malibu Media, LLC v. John Doe* No.

2:13-CV-135-RLM-JEM, 2014 WL 1031336, at *2 (N.D. Ind. Mar. 17, 2014) (denying Malibu

Media's motion to strike failure to mitigate damages as an affirmative defense finding that the

defense presents a substantial question of law and that the Court could not say with any

"certainty that plaintiffs would succeed despite any state of facts which could be proved in support of the defense."); *Malibu Media, LLC*, No. CIV.A. 12-2078, 2013 WL 1702549, at *8 (denying Malibu Media's motion to strike, holding that failure to mitigate damages is an equitable defense that forecloses or limits a plaintiff's ability to recover from an injury due to its own misconduct); *Malibu Media, LLC v. Zumbo*, No. 2:13-CV-729-JES-DNF, 2014 WL 2742830, at *4 (M.D. Fla. June 17, 2014) (denying Malibu Media's motion to strike as defendant has sufficiently alleged that [p]laintiff has purposefully avoided taking sufficient steps to protect their copyrighted material because it is more profitable to allow their subscribers to distribute content and seek judgments and/or settlements from the subscribers).

Some courts have indeed recognized that knowing failure to stop ongoing copyright infringement amounts to a failure to mitigate. *See Tingley Sys., Inc. v. HealthLink, Inc.*,509 F.Supp.2d 1209, 1219 (M.D. Fla. 2007) (finding dispute about whether copyright holder sent warning letter to defendant constituted genuine issue of material fact in defense of failure to mitigate damages); *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, 4:08-CV-03181, 2010 WL 4366990, at *47-48 (S.D. Tex. Oct. 27, 2010); *Frank Betz Assocs., Inc. v. J.O. Clark Constr.*, LLC, CIV.A 3:08-CV-00159, 2010 WL 2253541, at *18-19 (M.D. Tenn. May 30, 2010).

Defendant alleges that Plaintiff failed to send a notice under 17 U.S.C. § 512(c)(3)(A)(i-vi) to the online service provider hosting the hash files identified under Exhibit B of the Amended Complaint. Mainstream copyright owners now send takedown notices for more than 6.5 million infringing files, on over 30,000 sites, each month.  The very purpose of such notices is to purge infringed upon work from websites permitting their download so that copyright holders can prevent infringement, and thereby limit their damages.  Inexplicably, Plaintiff failed to send this notice, or take any steps whatsoever to mitigate damages. Moreover,

17

Defendant believes that Plaintiff even acted to the contrary and that IPP or another agent of

Malibu Media is responsible for initially seeding some of Malibu's content onto BitTorrent in the

first place and for facilitating infringing downloads by BitTorrent users. Accordingly, Defendant

has provided sufficient notice of the nature of this defense.

**X.    Conclusion**

In sum, Defendant's First, Second, Third, Fourth, Fifth, Seventh and Eighth Affirmative

Defenses are comprehensible and adequately provide Plaintiff with fair notice of the nature of

the defenses. Further, Plaintiff has failed to show that Defendant's First, Second, Third, Fourth,

Fifth, Seventh and Eighth Affirmative Defenses have resulted in prejudice to Plaintiff. As such,

the Motion to Strike should be denied as to Defendant's First, Second, Third, Fourth, Fifth,

Seventh and Eighth Affirmative Defenses.

WHEREFORE, Defendant respectfully requests that this Court dismiss Plaintiff's Motion

to Strike as to Defendant's First, Second, Third, Fourth, Fifth, Seventh and Eighth Affirmative

Defenses, and grant any additional and further relief that the Court deems just and equitable

under the circumstances. If this Court does grant Plaintiff's Motion to Strike Defendant's First,

Second, Third, Fourth, Fifth, Seventh and Eighth Affirmative Defenses, in whole or in part,

Defendant respectfully requests leave to amend his Answer.

Date: June 26, 2015                                Respectfully submitted,

                                                   MATT GUASTAFERRO

                                                   By Counsel:

                                                   McClanahan Powers, PLLC

                                                   /s/___Robert Powers
                                                   Robert Powers, Esq.
                                                   VSB # 80822
                                                   McClanahan Powers, PLLC

1604 Spring Hill Rd., Ste. 321
Vienna, VA 22182
Telephone: (703)-520-1326
Facsimile:  (703) 828-0205
Email: rpowers@mcplegal.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ Robert Powers      .