## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| MALIBU MEDIA, LLC,  )<br> )<br>        *Plaintiff,*  )<br> )<br>     v.  )<br> )<br>MATT GUASTAFERRO,  )<br> )<br>        *Defendant.*  )<br> ) | Civil Action No. 1:14-cv-1544 |

### MEMORANDUM OPINION

This matter comes before the Court on a Motion to Strike Affirmative Defenses by Plaintiff Malibu Media, LLC ("Malibu Media"). Dkt. No. 18. The matter has been fully briefed by the parties and the Court heard oral argument on July 24, 2015. For the reasons set forth below, as well as those stated in open court, the motion will be granted in part and denied in part.

### I.      Background

On November 17, 2014, Malibu Media commenced this copyright infringement action against Defendant Matt Guastaferro, alleging that he copied and distributed sixty-two of Plaintiff's copyrighted works without its consent. Malibu Media requests that the Court order Defendant to delete and permanently remove Plaintiff's copyrighted works as well as enjoin him from infringing its works in the future. It also seeks statutory damages and reasonable attorneys' fees and costs pursuant to 17 U.S.C. §§ 504–05.

On May 22, 2015, Defendant filed his Answer, in which he denied ever having downloaded or distributed any of Malibu Media's movies. He also raised nine affirmative defenses, eight of which form the basis of this motion. Particularly relevant here, Defendant has

1

alleged that Malibu Media "appears to seek to obtain its principal revenue through litigation rather than through its monthly service fee of $19.99 . . . ." Answer ¶ 34. He further states that "IPP or another agent of Malibu Media is responsible for initially seeding some of Malibu's content onto BitTorrent in the first place and for facilitating infringing downloads by BitTorrent users" in an attempt to "to extract exorbitant sums from individuals for alleged copyright infringement."[1] Def.'s Opp'n 11–12.

## II.   Legal Standard

Rule 12(f) allows a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts generally view Rule 12(f) motions "with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (citation and internal quotation marks omitted); *cf.* Conley v. Gibson, 355 U.S. 41, 47–48 & n. 9 (1957) (noting that the purpose of procedural motions, including 12(f) motions, is "to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues"). "Traditionally, [Rule 12(f)] imposes a sizable burden on the movant, and courts typically strike defenses only when they have no possible relation to the controversy." *Lopez v. Asmar's Mediterranean Food, Inc.*, No. 1:10-cv-1218, 2011 WL 98573, at *1 (E.D. Va. Jan. 10, 2011) (internal citations and quotation marks omitted). A party may meet this high burden by showing that "a defense ... is clearly insufficient as a matter of law." *Hanzlik v. Birach*, No. 1:09-cv-221, 2009 WL 2147845, at *4 (E.D. Va. July 14, 2009) (citations omitted). Nonetheless, under the liberal amendment policy prescribed by Rule 15(a), whenever a motion to strike is granted, "the

---

[1] For reasons unknown, this highly pertinent allegation was not included in the Answer.

2

defendant should generally be given leave to amend." *Lopez*, 2011 WL 98573, at *1 (citation

and internal quotation marks omitted); *accord* Fed. R. Civ. P. 15(a)(2).

## III.   Analysis

Malibu Media has moved to strike certain portions of Defendant's Answer for failure to

comply with the pleading requirements of Rule 8.  Specifically, it argues that certain paragraphs

should be stricken because Defendant asserted invalid or inapplicable affirmative defenses and

improperly pleaded "negative defenses" as affirmative defenses.

Rule 8(c) requires that all "avoidance or affirmative defenses" be affirmatively pled in

the answer. Fed. R. Civ. P. 8(c).  The Fourth Circuit has defined an affirmative defense as "the

defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . .

claim, *even if all allegations in the complaint are true.*" *Emergency One, Inc. v. Am. Fire Eagle

Engine Co.*, 332 F.3d 264, 271 (4th Cir. 2003) (emphasis added).  Particularly relevant here, this

Court has held that the heightened pleadings requirements of *Iqbal* and *Twombly* do not apply to

affirmative defenses. *E.g.*, *Lopez v. Asmar's Mediterranean Food, Inc.*, No. 1:10-cv-1218, 2011

WL 98573, at *2 (E.D. Va. Jan. 10, 2011) ("This Court will not import [the "entitled to relief"]

language [of Rule 8(a)], nor *Twombly* and *Iqbal's* interpretations of it, to a different rule that

lacks that language.").  Rather, affirmative defenses are sufficient if they provide "fair notice of

the nature of the defense." *Clem v. Corbeau*, 98 F. App'x 197, 203 (4th Cir. 2004).  Under this

lenient standard, the Court will address each challenged affirmative defense.

*a.  First Affirmative Defense—Fair Use*

"Fair use" is a statutory defense that allows a person to infringe a copyrighted work for

"purposes such as criticism, comment, news reporting, teaching, scholarship, or research." 17

U.S.C. § 107; *Thomas M. Gilbert Architects, P.C. v. Accent Builders & Developers, LLC*, 629 F.

Supp. 2d 526, 533 (E.D. Va. 2008), *aff'd*, 377 F. App'x 303 (4th Cir. 2010). "The rationale for the fair use doctrine is that, when the free flow of information is sufficiently vital, it should override the copyright holder's interest in the exclusive control of the work." *Advanced Computer Serv. of Mich., Inc. v. MAI Sys. Corp.*, 845 F. Supp. 356, 364 (E.D. Va. 1994).

Malibu Media moves to strike this defense as deficient because Defendant has "fail[ed] to state the required plain and short statement of supporting facts." Pl.'s Mot. Strike 4. Under the liberal notice pleading standard, however, Defendant's allegations that his "use of any works, if any, was non-commercial," and that Malibu Media "routinely shared [its films] for free" certainly provide Plaintiff with fair notice as to the substance of his defense. Answer ¶ 33; *Clem*, 98 F. App'x at 203. The Court will therefore deny the motion to strike this defense.

   b.  *Second Affirmative Defense—Copyright Misuse*

The copyright misuse defense aims to prevent abuse of the public policy embodied by the Copyright Act—namely, to "promote the Progress of Science and useful Arts." *Lasercomb Am., Inc. v. Reynolds*, 911 F.2d 970, 975–77 (4th Cir. 1990) (quoting U.S. CONST., art. I, § 8, cl. 8). Although violations of antitrust law or other anti-competitive behavior has been found to be an example of copyright misuse, the defense "is viable outside of anti-trust violations." *Thomas M. Gilbert Architects*, 629 F. Supp. 2d at 536. Indeed, the defense applies when "the copyright is being used in a manner violative of the public policy embodied in the grant of a copyright." *Lasercomb*, 911 F.2d at 978.

Here, Malibu Media asserts that the defense fails because Defendant "does not and cannot allege that Plaintiff engages in any anti-competitive behavior or otherwise seeks to secure an exclusive right or limited monopoly not authorized by the Copyright Office." Pl.'s Mot. Strike 5. As stated above, however, the defense is not limited to these circumstances. Because

4

the validity of the defense is an inquiry better suited for resolution following discovery, it is premature at this stage for the Court to conclude that the defense is "clearly insufficient as a matter of law." *Hanzlik*, 2009 WL 2147845, at *4. Defendant has also given fair notice of the basis of his defense—that is, Plaintiff's use of its copyrights "to obtain its principal revenue through litigation rather than through its monthly service fee . . . ." Answer ¶ 34. For these reasons, the motion to strike this defense will be denied.

c.   *Third Affirmative Defense—Unclean Hands*

The doctrine of unclean hands allows a court to deny injunctive relief where the party seeking the relief "'encouraged, invited, aided, compounded, or fraudulently induced' the other party's wrongful conduct." *Gitter v. Cardiac & Thoracic Surgical Assocs., Ltd.*, 338 F. App'x 348, 349 (4th Cir. 2009) (quoting *Perel v. Brannan*, 267 Va. 691, 706 (2004)). Additionally, there must be a "close nexus" between the plaintiff's misconduct and the "transaction or subject matter sued on." *Worldcom, Inc. v. Boyne*, 68 F. App'x 447, 451 (4th Cir. 2003) (citations and internal quotation marks omitted). The Fourth Circuit has applied the doctrine in copyright infringement actions to estop the plaintiffs from asserting infringement where the infringement "was caused and brought about, in part at least, by ... the dereliction of their own agent." *Tempo Music, Inc. v. Myers*, 407 F.2d 503, 507 (4th Cir. 1969).

In this case, Defendant has alleged that Plaintiff's claims are barred by the doctrine "as Plaintiff's use of its copyrights violates public policy." Answer ¶ 35. Such an allegation does not appear to trigger the doctrine because it says nothing of how Malibu Media "encouraged, invited, aided, compounded, or fraudulently induced" Defendant's allegedly wrongful conduct. *Gitter*, 338 F. App'x at 349. Defendant's response to this motion, however, sets forth factual averments that do appear to support his invocation of the doctrine. For

5

instance, he asserts that "IPP or another agent of Malibu Media is responsible for initially seeding some of Malibu's content onto BitTorrent in the first place and for facilitating infringing downloads by BitTorrent users" in an attempt to "to extract exorbitant sums from individuals for alleged copyright infringement." Def.'s Opp'n 11–12.

Malibu Media has moved to strike this defense on the basis that he has "not sufficiently alleged copyright misuse." Pl.'s Mot. Strike 6. In support thereof, he relies upon a recent decision of this Court, in which it granted Malibu Media's motion to strike "because Plaintiff cannot have unclean hands if Defendant did not sufficiently plead copyright misuse." *Malibu Media, LLC v. Alfred Popp,* No. 1:14-cv-700, Dkt. No. 20 at 8 (E.D. Va. April 13, 2015). The Court respectfully disagrees with this conclusion and considers the defense one that is better suited for resolution following discovery. Indeed, the Fourth Circuit did not premise its decision barring the copyright infringement claim pursuant to the doctrine of unclean hands on an associated defense of copyright misuse. *Tempo Music,* 407 F.2d at 507. Thus, the pleading requirement that Plaintiff urges here does not appear to exist.

Accordingly, because Plaintiff is on notice of Defendant's allegations that it "seeded" some of its content onto BitTorrent for the purpose of extracting settlements in the numerous copyright infringement suits that it has filed, the Court will decline to strike this defense as well.

### d.   Fourth Affirmative Defense—Abandonment

In copyright infringement actions, abandonment occurs when "there is an intent by the copyright proprietor to surrender rights in his work." *E.g., Dam Things from Den. v. Russ Berrie & Co., Inc.,* 290 F.3d 548, 560 (3d Cir. 2002) (citing 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.06 (2001)). "[I]t is undisputed that there must be either an act, or a failure to act, from which we can readily infer an intent to abandon the right." *Id.* Malibu Media

6

has moved to strike this defense because "Defendant does not, and cannot, allege any set of facts that would evince Plaintiff's intent to surrender its rights in the works or 'acquiesce' to the alleged infringement." Pl.'s Mot. Strike 7.

In support of his abandonment defense, Defendant has alleged that "Plaintiff failed to send a notice under 17 U.S.C. §512(c)(3)(A)(i-vi) to the online service provider hosting the hash files identified in Exhibit B of the Amended Complaint." Answer ¶ 36. Under the liberal pleading standard, this allegation certainly gives Malibu Media "notice of the nature of the defense." *Clem*, 98 F. App'x at 203. Moreover, whether Plaintiff's failure to send a notice, allegedly required by statute, "evidenced an intent to abandon its copyrights is a question of fact to be determined at a later phase of this litigation." *Malibu Media, LLC v. Does*, No. 12-cv-2078, 2013 WL 1702549, at *6 (E.D. Pa. Mar. 6, 2013) (citing *Capitol Records, Inc. v. Naxos of Am., Inc.*, 372 F.3d 471, 483 (2d Cir. 2004)) (denying motion to strike copyright abandonment affirmative defense). Accordingly, the Court will deny the motion to strike this defense.

   e. *Fifth Affirmative Defense—Minimal Creativity*

The "sine qua non of copyright is originality." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). "To be 'original,' the work in question must have been 'independently created by the author (as opposed to copied from other works),' and it must 'possess[ ] at least some minimal degree of creativity.'" *Darden v. Peters*, 488 F.3d 277, 286 (4th Cir. 2007) (quoting *Feist*, 499 U.S. at 345). The Supreme Court has set the bar for creativity very low, explaining that "[t]he vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *Feist*, 499 U.S. at 345 (citation and internal quotation marks omitted). Nevertheless, "[t]here remains a

7

narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent." *Id.* at 359.

Malibu Media has moved to strike this defense, stating that "Plaintiff's motion picture works meet this low requirement as a matter of law and common sense." Pl.'s Mot. Strike 8. This is, of course, an assertion of disputed fact. As is evident from the caselaw, a determination on the validity of the defense entails a factual analysis, thereby rendering it inappropriate for resolution on a motion to strike. *See Popp*, No. 1:14-cv-700, Dkt. 20 at 10 (denying motion to strike because determination of whether Plaintiff's works are creative enough to meet low threshold standard is a question of fact). Because Defendant has given fair notice as to the nature of this defense, the Court will not strike it.

### f. Sixth Affirmative Defense—Invalidity

In his sixth affirmative defense, Defendant states that "Plaintiff's copyrights are invalid and/or unenforceable." Answer ¶ 38. Malibu Media has moved to strike this defense as conclusory as well as an improperly pleaded negative defense—that is, it constitutes a denial rather than an affirmative defense. Because Defendant does not oppose the Court striking this defense without prejudice, Def.'s Opp'n 14, the Court will do so.

### g. Seventh Affirmative Defense—Innocent Infringer

In his seventh affirmative defense, Defendant claims that, if he infringed at all, he is an "innocent infringer under Section 504 of the Copyright Act". Answer ¶ 29. That statute provides as follows:

> In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c)(2). Furthermore, a person who innocently infringes in reliance on an authorized copy of a work that omitted the copyright notice "*incurs no liability* for actual or statutory damages under section 504 . . . ... if such person proves that he or she was misled by the omission of notice." 17 U.S.C. § 405(b) (emphasis added); *cf.* 17 U.S.C. § 402(d) ("If a notice of copyright . . . appears on the published phonorecord or phonorecords to which a defendant in a copyright infringement suit had access, then no weight shall be given to such a defendant's interposition of a defense based on innocent infringement.").

Malibu Media argues that Defendant's state of mind is irrelevant in copyright infringement actions. It also maintains that the statutory sections cited do not constitute an affirmative defense because they merely provide for a reduction in statutory damages and therefore cannot "defeat" the claim. Pl.'s Mot. Strike 9 (citing Black's Law Dictionary (10th ed. 2014) (defining "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true")). As the statute explicitly states, however, an innocent infringer "incurs no liability for actual or statutory damages under section 504"—the sole section relied upon by Malibu Media in its request for damages. *See* Compl. ¶ 33(A)–(F). Because the statute appears to give Defendant a basis for defeating Plaintiff's claim for damages, "even if all the allegations in the complaint are true," the Court will deny the motion to strike this defense.

*h. Eighth Affirmative Defense—Failure to Mitigate Damages*

The "essence" of a failure to mitigate damages affirmative defense is that "all or a part of the plaintiff's damage should reasonably have been avoided by the plaintiff . . . ." *Bossalina v. Lever Bros.*, 849 F.2d 604 (4th Cir. 1988) (quoting 22 Am. Jur. 2d Damages § 200 (1965));

*accord Malibu Media*, 2013 WL 1702549, at *8 (describing failure to mitigate damages as an "equitable defense[] that foreclose[s] or limit[s] a plaintiff's ability to recover from an injury due to its own misconduct). Some courts have recognized that a plaintiff's knowing failure to stop ongoing copyright infringement may represent a failure to mitigate. *E.g., Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1219 (M.D. Fla. 2007) (finding genuine issue of material fact existed on failure to mitigate damages defense where there was a dispute over whether copyright holder sent warning letter to defendant); *Malibu Media, LLC v. Zumbo*, No. 2:13-cv-729, 2014 WL 2742830, at *4 (M.D. Fla. June 17, 2014) (denying motion to strike where defendant alleged that plaintiff "purposefully avoided taking sufficient steps to protect their copyrighted material because it is more profitable to allow their subscribers to distribute content and seek judgments and/or settlements from the subscribers"). Although typically only applied to claims for actual damages, the defense may be relevant to claim requesting statutory damages because "one purpose of statutory damages is to approximate actual damages that are difficult to prove." *Malibu Media, LLC v. Doe*, No. 2:13-cv-135, 2014 WL 1031336, at *2 (N.D. Ind. Mar. 17, 2014).

Here, Malibu Media claims that the defense is inapplicable because the statute cited by Defendant is a "safe harbor" provision that protects service providers only. However, Defendant does not claim that Plaintiff's failure to send a notice is *required* under the provision. Instead, he avers that its failure to do so, given that the statutory procedure exists for the purpose of deterring copyright infringement, shows a failure to mitigate damages. Apparently, such notices

are rather routine.[2]   Accordingly, because Defendant has given fair notice of his defense under the liberal pleading standard, the Court will deny the motion to strike this last defense.

**IV.   Conclusion**

For the foregoing reasons, the Court will strike only the sixth affirmative defense of invalidity without prejudice, as Defendant has stated he does not oppose such a ruling by the Court.

An appropriate Order shall issue.

July 28, 2015

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[2] Defendant states that "[m]ainstream copyright owners now send takedown notices for more than 6.5 million infringing files, on over 30,000 sites, each month." Def.'s Opp'n 12 n.4 (citing Center for the Protection of Intellectual Property, *The Failure of the DMCA Notice and Takedown System*, GEORGE MASON UNIV. SCH. OF L. (Dec. 5, 2013), http://cpip.gmu.edu/2013/12/05/the-failure-of-the-dmca-notice-and-takedown-system-2/).